BUILDERS ASSOCIATION OF EASTERN OHIO AND WESTERN
PENNSYLVANIA, INC., APPELLEE, *v.*
COMMERCIAL PIPING CO., INC., APPELLANT.

(No. 81-820—Decided April 21, 1982.)

*Manchester, Bennett, Powers & Ullman Co., L.P.A., Mr. William T. Bodoh* and *Mr. Timothy J. Jacob,* for appellee.

*Messrs. Harrington, Huxley & Smith* and *Mr. Frederick S. Coombs III,* for appellant.

KRUPANSKY, J.   The issue here is whether the National Labor Relations Act preempts an action brought in a state court to compel arbitration of a dispute between an employer and an employers' association over the employer's execution of a separate agreement with a union, allegedly in violation of an agreement between the employer and the association.

The association contends this is merely an action for breach of contract over which the state court may exercise

jurisdiction. Commercial argues this controversy is within the exclusive jurisdiction of the board.

The doctrine of preemption in labor law was developed to prevent state court interference with the federal regulatory scheme. The overriding goal of preemption has been to promote a uniform application of the Act by a centralized administrative agency, thereby avoiding "potential conflict of rules of law, of remedy, and of administration," promulgated by different tribunals. *San Diego Building Trades Council* v. *Garmon* (1959), 359 U. S. 236, 242. The focus of inquiry when an issue of federal preemption arises has been the extent to which state court adjudication would interfere with a uniform national labor policy as administered by the board. See, *e.g.*, *Local 100, United Association of Journeymen & Apprentices* v. *Borden* (1963), 373 U. S. 690. Accordingly, the critical inquiry is "whether the controversy presented to the state court is *identical to* * * * or different from * * * *that which could have been*, but was not, *presented to the Labor Board.* For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board * * * ." (Emphasis added.) *Sears Roebuck & Co.* v. *San Diego County District Council of Carpenters* (1978), 436 U. S. 180, 197. When the conduct which is the subject matter of a suit is arguably prohibited by the Act, the risk of interference with federal labor policy is great, and a state court is precluded from exercising jurisdiction. *Local 100, United Association of Journeymen & Apprentices* v. *Borden, supra.*

Federal concern in the area of multi-employer bargaining is pervasive. Thus, multi-employer bargaining has traditionally been an area of vital interest to the board. The board has favored the multi-employer unit as a bargaining mechanism because it has served to strengthen the process of collective bargaining, particularly in industries characterized by numerous smaller employers. Through group bargaining, small employers are better enabled to match forces with a large union and may avoid "the competitive disadvantages resulting from nonuniform contractual terms." *NLRB* v. *Truck Drivers Local 449* (1957), 353 U. S. 87, 96. At the same time,

employees are benefited, for example, by the adoption of uniform worker benefit programs made possible by an association of employers. *NLRB* v. *Charles D. Bonanno Linen Service, Inc.* (C.A. 1, 1980), 630 F. 2d 25, 28, affirmed (1982), _____ U. S. _____, 70 L. Ed. 2d 656.

Throughout its long history of dealing with multi-employer bargaining, the board's settled policy has been to recognize the employer association as a vital factor in the promotion of peaceful labor relations.

Pursuant to Section 159(b), Title 29, U. S. Code,[1] the board has established the practice of certifying multi-employer units, and once established, both employers and unions are obligated to bargain with the employer groups. Sections 158(a)(5) and (b)(3), Title 29, U. S. Code.[2] The foremost objective of the board and national labor policy has been to safeguard the stability of the employer unit. *NLRB* v. *Beck Engraving Co., Inc.* (C.A. 3, 1975), 522 F. 2d 475, 480. The function of effectuating this national labor policy has been committed primarily to the board. " * * * [T]he compelling conclusion is that Congress intended 'that the Board should continue its established administrative practice of certifying multi-employer units, and intended to leave to the Board's specialized judgment the inevitable questions concerning multi-employer bargaining bound to arise in the future.' " *NLRB* v. *Truck Drivers Local Union No. 449, supra,* at 96 (quoting 231 F. 2d, at 121). Since concurrent state court jurisdiction would create a risk of undermining national labor policy as articulated by the board, " * * * Congress recognized that the significance of these [employer] units requires that formulation of general rules governing them be entrusted to

---

[1] Section 159(b) provides in relevant part:

"The Board shall decide in each case whether * * * the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * * ."

[2] Section 158(a) provides in relevant part: "It shall be an unfair labor practice for an employer * * * (5) to refuse to bargain collectively with the representatives of his employees * * * ."

Section 158(b) provides in relevant part:

"It shall be an unfair labor practice for a labor organization or its agents * * * (3) to refuse to bargain collectively with an employer * * * ."

the expert judgment of the NLRB." *NLRB* v. *Beck Engraving Co., Inc., supra,* at 480.

Pursuant to national policy favoring preservation of the integrity of multi-employer units, the board will carefully scrutinize an agreement between the union and an individual employer to evaluate its effect on the stability of the multi-employer association. When separate negotiations between the individual employer and the union are destructive of group bargaining or operate to fragment the multi-employer unit, the board may find an unfair labor practice in violation of Sections 158(a)(5) and (b)(3). See, *e.g., Teamsters Union Local No. 378 and Olympia Automobile Dealers Assn.* (1979), 243 NLRB 1086, 102 LRRM 1007. When the separate agreement does not significantly fragment or weaken the position of the multi-employer group, the board is less likely to find a violation of the Act. See, *e.g., Sangamo Construction Co. and Southern Illinois Contractors Assn.* (1971), 188 NLRB 159, 77 LRRM 1039. Whether a particular agreement weakens the multi-employer unit and thereby constitutes an unfair labor practice, however, is not an issue for resolution by this court or any state court. Such a determination is exclusively within the province of the board.

The controversy here between Commercial and the association is the same as one which the association might have presented to the board. Had the association filed unfair labor practice charges with the board, alleging, as it did in its complaint here, that Commerical " * * * has weakened the bargaining position of the multi-employer bargaining group," the issue would have been whether Commercial's activity, *i.e.,* separate negotiations with the union, constituted an unfair labor practice. This issue, viz., whether the execution of a separate agreement amounts to an unfair labor practice, is identical to the issue resolved by the board in similar cases. See, *e.g., Teamsters Union Local No. 378 and Olympia Automobile Dealers Assn., supra; Plumbers and Steamfitters Union No. 323 and P.H.C. Contractors Assn. of Columbus* (1971), 191 NLRB 592, 77 LRRM 1769; *Sangamo Construction Co. and Southern Illinois Contractors Assn., supra.* If, as the association alleges, Commercial has acted in a manner destructive of the employer group, the board could find Com-

14

mercial violated Section 158(a)(5). Thus, the conduct that was the subject matter of the suit was arguably prohibited by Section 158. Under these circumstances, the exercise of jurisdiction over this case by the Common Pleas Court would have created a serious risk of interference with national labor policy. The Common Pleas Court, therefore, correctly declined to exercise jurisdiction over this controversy.

The association characterizes this suit as one "based upon a private contract between two commercial entities." However, "It is not the label affixed to the cause of action under state law that controls the determination of the relationship between federal and state jurisdiction." *Local 100, United Assn. of Journeymen & Apprentices* v. *Borden, supra,* at 698. Rather, the focus is upon the *conduct* which is the basis of the suit. When the conduct involved in the suit is "conduct whose lawfulness could initially be judged only by the federal agency vested with exclusive primary jurisdiction to apply federal standards," state court jurisdiction is preempted. *Id.,* 698. The conduct of which the association complains here is the signing of a separate agreement between Commercial and the union. Since this conduct is arguably prohibited by the Act, state court jurisdiction is precluded, and the characterization of this suit under state law is irrelevant. "Pre-emption * * * is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, *not the formal description of governing legal standards,* that is the proper focus of concern." (Emphasis added.) *Motor Coach Employees* v. *Lockridge* (1971), 403 U. S. 274, 292.

The association argues the sole issue here is whether Commercial breached an agreement to arbitrate and that the merits of the underlying controversy are not in issue. When the conduct on which the suit is based, however, is subject to the board's jurisdiction, the issue of whether to defer to arbitration is a policy decision for determination by the board. *Newspaper Guild of Greater Philadelphia, Local 10* v. *NLRB* (1980), 636 F. 2d 550, 559. Pursuant to Section 160(a), the board's jurisdiction to remedy an unfair labor practice is not "affected by any other means of adjustment * * * established by agreement, law, or otherwise * * * ." When the conduct which is the subject of the controversy is arguably prohibited

under the Act, the board may decide to adjudicate the merits of the dispute, despite the parties' agreement to arbitrate. *NLRB* v. *Strong* (1969), 393 U. S. 357, 360-361. The presence of an arbitration clause in an agreement does not preclude the exercise of jurisdiction by the board over an unfair labor practice. *NLRB* v. *Acme Industrial Co.* (1967), 385 U. S. 432.

When the parties have agreed to arbitrate, the decision to defer to arbitration is a matter over which the board exercises considerable discretion. In deciding whether federal labor policy would best be served by deferral to arbitration, the board considers all the circumstances of the particular case, *e.g.,* whether arbitration will resolve the dispute in a manner consistent with the purposes of the Act, the willingness of the parties to resort to arbitration, and whether the controversy is suited to resolution by arbitration. *Collyer Insulated Wire and Local Union 1098 IBEW* (1971), 192 NLRB 837, 77 LRRM 1931. In those instances when the board does defer to arbitration, jurisdiction of the proceeding is retained by the board, *id.* at 843, and "[t]he superior authority of the Board may be invoked at any time." *Carey* v. *Westinghouse Electric Corp.* (1964), 375 U. S. 261, 272.

The doctrine of preemption was designed to avoid not only inconsistent substantive rules of law, but also disparities in administration and remedies. "Conflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy * * * . The technique of administration and the range and nature of those remedies that are and are not available is a fundamental part and parcel of the operative legal system established by the National Labor Relations Act." *Motor Coach Employees* v. *Lockridge, supra,* 287.

If the risk of inconsistent applications of national labor policy is to be avoided, a state court must decline to exercise jurisdiction when there is a danger of disparate remedies prescribed for conduct which is arguably prohibited under the Act. If this controversy had been submitted to the board, the board may or may not have resolved to remedy the dispute through arbitration. That is not a matter for us to decide; rather, the administration and remedy of a controversy involving activity which is arguably an unfair labor practice is within the exclusive competence of the board.

16

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, ACTING C. J., REILLY, SWEENEY, HOLMES and C. BROWN, JJ., concur.

LOCHER, J., concurs in the judgment.

REILLY, J., of the Tenth Appellate District, sitting for Celebrezze, C. J.