Plaintiff-appellant, Independent Electrical Contractors of Greater Cincinnati, Inc. ("IEC"), appeals a decision of the Hamilton County Court of Common Pleas granting summary judgment in favor of the appellees, the Hamilton County Division of Public Works, the city of Forest Park, ESI, Inc., and International Brotherhood of Electric Workers, Local 212 ("Local 212").
IEC is an association of nonunion electrical contractors. Two of its members unsuccessfully submitted bids to perform electrical work on the Hamilton County Courthouse and Forest Park Municipal Building construction projects.
ESI is a union electrical contractor that worked on both projects. ESI's electricians are members of and are represented by Local 212. ESI and Local 212 are parties to a collective-bargaining agreement in which ESI agreed to withhold union dues from the paychecks of employees who sign proper authorizations *Page 582 
and to send the money directly to Local 212. The amount of dues is set by the union and its members; ESI has no say in the amount of dues or their use.
Since at least January 1, 1990, Local 212 has maintained the Industry Advancement Fund, which it uses to finance what is known in the construction industry as a "job targeting" or "market recovery" program. The purpose of the job-targeting program is to assist union electrical contractors to compete more effectively with nonunion contractors in bidding for and obtaining contracts for construction work by subsidizing their labor costs on selected jobs.
The fund is financed by the working dues paid by the members of Local 212. Prior to 1991, three percent of members' gross wages was deducted for union dues. Pursuant to a vote by the members, two percent went to the Industry Advancement Fund with the remainder going to the union's general fund. In November 1991, the members voted to increase their total dues to five percent, with three percent going to the Industry Advancement Fund.
ESI properly withheld union dues from the paychecks of employees working on the Hamilton County Courthouse and Forest Park Municipal Building projects, both "public improvements" within the meaning of R.C. Chapter 4115. ESI remitted the total amount of dues without distinguishing between the amount earmarked for the general fund and the amount earmarked for the Industry Advancement Fund. Local 212 then placed either two percent or three percent, depending on the date, into the Industry Advancement Fund and subsequently disbursed some of the funds to union contractors to assist them in obtaining contracts.
On October 9, 1992, IEC filed a complaint pursuant to R.C.4115.16(B) against Hamilton County, the city of Forest Park, and ESI, alleging that they had violated the Prevailing Wage Law, R.C. Chapter 4115. IEC contended that the defendants had made illegal deductions from the prevailing wages of employees working on the Hamilton County Courthouse and the Forest Park Municipal Building projects of monies that were placed in the Industry Advancement Fund. Subsequently, ESI filed a third-party complaint for indemnification against Local 212.
IEC filed a motion for summary judgment. Local 212, ESI, and Forest Park also filed motions for summary judgment, in which they alleged that the matter was preempted by federal law. The trial court agreed, concluding that it lacked subject-matter jurisdiction to hear the case. It denied IEC's motion for summary judgment and granted summary judgment in favor of the appellees. This appeal followed.
IEC presents two assignments of error for review. In its first assignment of error, it states that the trial court erred in granting appellees' motions for *Page 583 
summary judgment. It argues that Ohio's Prevailing Wage Law is not preempted by federal labor law and that the trial court had subject-matter jurisdiction over the action. We find this assignment of error is not well taken.
In San Diego Bldg. Trades Council v. Garmon (1959),359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, the U.S. Supreme Court held:
"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id. at 245,79 S.Ct. at 780, 3 L.Ed.2d at 783.
The Garmon doctrine is designed to prevent conflict between state and local regulation and Congress's "integrated scheme of regulation" embodied in the National Labor Relations Act, Sections 157 and 158, Title 29, U.S.Code. Bldg. Constr. TradesCouncil of the Metro. Dist. v. Associated Bldrs. Contrs. ofMassachusetts/Rhode Island, Inc. (1993), 507 U.S. ___, ___ — ___,113 S.Ct. 1190, 1194-1195, 122 L.Ed.2d 565, 574; Cannon v.Edgar (C.A.7, 1994), 33 F.3d 880, 884. See, also, Bldrs. Assn.of E. Ohio W. Pa., Inc. v. Commercial Piping Co. (1982),70 Ohio St.2d 9, 11, 24 O.O.3d 30, 31, 434 N.E.2d 271, 272-273. In passing the NLRA, Congress "largely displaced state regulation of industrial relations." Wisconsin Dept. of Industry, Labor Human Relations v. Gould, Inc. (1986), 475 U.S. 282, 286,106 S.Ct. 1057, 1061, 89 L.Ed.2d 223, 228.
In Communications Workers of Am. v. Beck (1988),487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634, the U.S. Supreme Court noted that Section 8(a)(3) of the NLRA permits an employer and an exclusive bargaining representative to enter into an agreement requiring all employees in the bargaining unit to pay periodic union dues as a condition of continued employment.Id. at 738, 108 S.Ct. at 2645, 101 L.Ed.2d at 642. The court found that a challenge to the use of union dues for purposes other than collective bargaining is subject to Section 8 and therefore preempted under Garmon.
Similarly, in Shen-Mar Food Products, Inc. (1976), 221 N.L.R.B. 1329, 1976 WL 6551, enforced as modified (C.A.4, 1977),557 F.2d 396, the NLRB stated that "when an employer ceases to deduct and remit dues in derogation of an existing contract, it is in effect unilaterally changing the terms and conditions of employment of its employees" and thus violates its duty to bargain under Section 8(a)(5) of the NLRA. Id. at 1329. The board went on to state that "matters concerning dues-checkoff authorization and labor agreements implementing such authorizations are exclusively within the domain of Federal law, having been preempted by the National Labor Relations Act * * *." Id. at 1330. See, also, SeaPak v. Indus., Technical Professional Emp., Div. of Natl. Maritime Union (S.D.Ga. *Page 584 
1969), 300 F. Supp. 1197, 1200, affirmed (C.A.5, 1970), 423 F.2d 1229, affirmed without opinion (1971), 400 U.S. 985,91 S.Ct. 452, 27 L.Ed.2d 434 ("The area of checkoff of union dues has been federally occupied to such an extent * * * that no room remains for state regulation in the same field."); Internatl.Bhd. of Operative Potters v. Tell City Chair Co. (S.D.Ind.1968),295 F. Supp. 961, 965 (The NLRB has authority to regulate checkoffs under federal law and "Congressional regulation of the area of check-offs is sufficiently pervasive and encompassing to pre-empt the force of [state law].").
In the present case, IEC argues that wage deductions which were placed in the Industry Advancement Fund violated Ohio Adm. Code 4101:9-4-07(B), which provides:
"The following deductions from wages may be made only if, prior to the commencement of work by the employee on any project, employers procure and maintain, in writing, proof of voluntary deductions signed by the employee:
"* * *
"(6) Any deductions to pay regular union initiation fees and membership dues, not including fines or special assessments, provided that a collective bargaining agreement between the employer and representatives of its employees permits such deductions and such deductions are not otherwise prohibited by law."
IEC claims that the deductions were not regular union dues but special assessments.
The collective-bargaining agreement states that "[e]ach Employer shall withhold the amount established by the IBEW, Local Union 212, Bylaws from each IBEW member's weekly gross pay for working dues. Each employer shall deposit monthly with the Local Union 212, IBEW, the aforementioned amounts for each member upon authorization from said member." ESI paid its employees the prevailing wage and deducted from that wage either three percent or five percent, depending on the date, which was the amount set by Local 212 as each employee's dues.
The NLRA "leaves the substantive terms of collective bargaining agreements to management and union representatives to hammer out in the collective bargaining process." Cannon,supra, 33 F.3d at 884-885. Application of the Prevailing Wage Law as argued by IEC would allow the state to regulate the amount of union dues that could be withheld from members' paychecks and the purposes to which those dues could be put. IEC's characterization of the case is irrelevant, see Bldrs.Assn., 70 Ohio St.2d at 14, 24 O.O.3d at 33,434 N.E.2d at 274-275; it actually seeks to have the state control matters at the heart of the collective-bargaining process, which is regulated by the NLRA. Under IEC's interpretation, ESI could comply with the Prevailing Wage Law *Page 585 
only by breaching its duty to remit union dues under the collective-bargaining agreement, a violation of Section 8 of the NLRA. Therefore, we conclude that the issue is preempted underGarmon.
IEC also argues that two exceptions to the Garmon doctrine apply in the present case. A claim is not preempted if the regulated activity is (1) of only peripheral concern to the federal labor laws or (2) touches interests deeply rooted in local feeling and responsibility. Belknap, Inc. v. Hale (1983),463 U.S. 491, 509, 103 S.Ct. 3172, 3182, 77 L.Ed.2d 798, 814;Statler v. IBEW Local Union 71 (1978), 51 Ohio St.2d 36, 40-41, 5 O.O.3d 20, 22-23, 364 N.E.2d 874, 877.
These exceptions have been applied to cases involving intentional torts or imminent threats to public order. Sears,Roebuck Co. v. San Diego Cty. Dist. Council of Carpenters
(1978), 436 U.S. 180, 204, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209,229; Makro, Inc. v. United Food Commercial Workers Union,Local 880 (1989), 64 Ohio App.3d 439, 443-444, 581 N.E.2d 1143,1145; Cannon, supra, 33 F.3d at 884. In those cases, the court looked to see if the state controversy was identical to or divergent from that which could have been presented to the NLRB. If the issue was not identical, as would be the case with tortious behavior, the state could exercise jurisdiction.Belknap, supra, 463 U.S. at 510, 103 S.Ct. at 3183,77 L.Ed.2d at 814; Sears, supra, 436 U.S. at 201-202,98 S.Ct. at 1759-1760, 56 L.Ed.2d at 228; Makro, supra,64 Ohio App.3d at 443, 581 N.E.2d at 1145-1146.
The NLRB has considered the identical issue argued by IEC, concluding that deductions used to fund job-targeting programs are not special assessments but merely a reallocation of periodic dues. Re Internatl. Bhd. of Elec. Workers, Local 82
(July 21, 1993), NLRB Region 9 Nos. 9-CB-8493, 9-CA-30588, and 9-CB-8511, unreported. Therefore, we conclude that the interests protected by the NLRA and the interests protected by state law do not, under the circumstances of this case, involve "discrete concerns" and the exceptions to Garmon are inapplicable. SeeBelknap, supra, 463 U.S. at 512, 103 S.Ct. at 3184,77 L.Ed.2d at 815; Statler, supra, 51 Ohio St.2d at 43, 5 O.O.3d at 24,364 N.E.2d at 878; Farmer v. Davey Compressor Co. (1989), 62 Ohio App.3d 596,598, 577 N.E.2d 110, 111.
Accordingly, the trial court did not err in finding that the issue was preempted by federal law and that it lacked subject-matter jurisdiction to hear the case. Since there is no issue of material fact and appellees are entitled to judgment of a matter of law, the trial court properly granted summary judgment in their favor. See Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74,375 N.E.2d 46, 47. IEC's first assignment of error is overruled. *Page 586 
In its second assignment of error, IEC argues that the trial court erred in overruling its motion for summary judgment because Local 212's job-targeting program violated Ohio's Prevailing Wage Law. Since we have already concluded that the issue is preempted by federal law, we find this assignment of error to be moot and we decline to address it.
Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
DOAN, P.J., GORMAN and M.B. BETTMAN, JJ., concur. *Page 587