UNITED FOOD AND COMMERCIAL WORKERS
UNION, LOCAL 1059, AFL–CIO, Appellant,

v.

PILLSBURY COMPANY, Appellee.

[Cite as *United Food & Commercial Workers Union, Local 1059, AFL–CIO v. Pillsbury Co.* (2000), 138 Ohio App.3d 427.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–607.

Decided June 29, 2000.

---

25. See *id.*

428

*Leonard S. Sigall,* for appellant.

*Vorys, Sater, Seymour & Pease, K. William Franken* and *Bradley K. Sinnott,* for appellee.

PETREE, Judge.

On November 19, 1998, plaintiff, United Food and Commercial Workers Union, Local 1059, AFL–CIO ("United"), filed a complaint against the Pillsbury Company ("Pillsbury"), asserting claims for breach of contract, promissory estoppel, and unjust enrichment. On April 23, 1999, the trial court dismissed that complaint, finding the claims raised therein were preempted by federal law and barred by

the doctrine of *res judicata.* United now appeals, raising the following two assignments of error:

"1. The court of common pleas erroneously held that plaintiff's claims are preempted by federal law.

"2. The court of common pleas erroneously held that plaintiff's claims are barred by the doctrine of res judicata."

This dispute is the result of an alleged agreement between United and Pillsbury, whereby each was to pay one-half of the cost of meeting and catering expenses incurred while the parties negotiated a new collective bargaining agreement in October 1996. United contends that Pillsbury breached that agreement, resulting in damages in the amount of $3,251.35.

On December 21, 1998, Pillsbury moved to dismiss United's complaint on the basis (1) that federal law applies to United's claims such that the trial court lacks jurisdiction over the subject matter involved, and (2) that United failed to state a claim upon which relief may be granted.

 Generally speaking, a Civ.R. 12(B) motion to dismiss is a procedural motion designed to test the sufficiency of a complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378. The relevant inquiry when ruling upon a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is whether the plaintiff has set forth any cause of action which the court has authority to decide. *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 666 N.E.2d 304. See, also, *McHenry v. Indus. Comm.* (1990), 68 Ohio App.3d 56, 587 N.E.2d 414. When making this determination, the court is not confined to the allegations of the complaint, but may consider relevant extraneous material without converting the motion into a motion for summary judgment. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526.

 On the other hand, the standard to be applied when determining whether or not to dismiss a complaint pursuant to Civ.R. 12(B)(6) is set forth in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. Therein, the Ohio Supreme Court stated that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 245, 71 O.O.2d at 224, 327 N.E.2d at 755, quoting *Conley v. Gibson* (1957), 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80, 84. Specifically, a court considering a Civ.R. 12(B)(6) motion to dismiss is limited to the face of the complaint. From that, it must appear beyond doubt that the plaintiff can prove no set of facts entitling him or her to recovery. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, 588–589; and *Greeley v. Miami*

*Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 229, 551 N.E.2d 981, 982.

Pillsbury contends that the trial court correctly dismissed United's complaint because it lacked subject matter jurisdiction over United's claims, and, for that reason, Pillsbury maintains that United failed to present a claim upon which relief could be granted. This contention, which was accepted by the trial court, is based upon the doctrine of federal preemption *vis à vis* the National Labor Relations Act ("NLRA"). In *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 691 N.E.2d 655, the Ohio Supreme Court explained:

"* * * The National Labor Relations Act ('NLRA') contains no express preemption provision. 'Where the pre-emptive effect of federal enactments is not explicit, "courts sustain a local regulation 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'"'" (Citations omitted.) *Id.* at 350, 691 N.E.2d at 660.

What is known as "Garmon" preemption is at issue in this case. Garmon preemption was set forth by the United States Supreme Court in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. Therein, the court explained that the NLRA forbids state and local regulation of activities that either are, or are arguably, protected by Sections 157 and 158, Title 29, U.S.Code.[1] In *International Longshoremen's Assn., AFL–CIO v. Davis* (1986), 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389, the Supreme Court explained:

"As the Garmon line of cases directs, the pre-emption inquiry is whether the conduct at issue was arguably protected or prohibited by the NLRA. * * *

"The precondition for pre-emption, that the conduct be 'arguably' protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption * * *. If the word 'arguably' is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board. * * * The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation. * * * [*Id.* at 394–395, 106 S.Ct. at 1914, 90 L.Ed.2d at 403.]

---

1. Garmon preemption prohibits not only inconsistent substantive rules of law, but also disparities in administration and remedies. *Bldrs. Assn. v. Commercial Piping Co.* (1982), 70 Ohio St.2d 9, 15, 24 O.O.3d 30, 33–34, 434 N.E.2d 271, 275.

"\* \* \*

"The better view is that those claiming pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted. [*Id.* at 396, 106 S.Ct. at 1915, 90 L.Ed.2d at 404.]"

The Supreme Court continued:

"\* \* \* [A] court first must decide whether there is an arguable case for pre-emption; if there is, it must defer to the Board, and only if the Board decides that the conduct is not protected or prohibited may the court entertain the litigation." *Id.* at 397, 106 S.Ct. at 1915–1916, 90 L.Ed.2d at 405.

Three sections of the NLRA are implicated in this appeal. First, Section 157, Title 29, U.S.Code provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

Second, Section 158(a)(5), Title 29, U.S.Code provides that it is an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees. And finally, Section 158(d), Title 29, U.S.Code defines what it means to bargain collectively. That section provides:

"For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. \* \* \*"

■ Pillsbury maintains that United's claims for breach of contract, promissory estoppel, and unjust enrichment are pre-empted by federal law, as its alleged repudiation of the agreement with United "arguably" violates Section 158(a)(5), Title 29, U.S.Code. This argument, however, ignores the NLRB's finding that Pillsbury's conduct is neither protected nor prohibited by the NLRA. United's charge was submitted to the NLRB on October 30, 1997. On February 19, 1998, United received a letter from an NLRB regional director, stating that its claim had been investigated but that Pillsbury's refusal to honor the alleged agreement

did not constitute a violation of Section 158(a)(5), Title 29, U.S.Code. As such, the director declined to issue a complaint against Pillsbury. United then requested a review of the regional director's refusal to proceed, and on July 1, 1998, the office of the general counsel reaffirmed the director's conclusion, noting that an "isolated contract breach" is insufficient to constitute a violation of Section 158(a)(5), Title 29, U.S.Code.

In *Garmon,* the United States Supreme Court held that it was essential to the administration of the NLRA that the determination of whether conduct violated the Act be left in the first instance to the NLRB. *Id.,* 359 U.S. at 244–245, 79 S.Ct. at 779–780, 3 L.Ed.2d at 782–783. The Supreme Court also explained that if the NLRB decides that the disputed activity is protected or prohibited by Section 157 or 158, Title 29, U.S.Code, then the matter is at an end, and the states are ousted of all jurisdiction. *Id.* at 245, 79 S.Ct. at 779–780, 3 L.Ed.2d at 783.

However, in this case, and in accordance with *Garmon,* United first submitted its claim to the NLRB, which, upon investigation, determined that the charge projected by United was not a valid charge under the NLRA. As such, the NLRB declined to accept jurisdiction of the matter, leaving it to be adjudicated by the courts. Because the NLRB determined that the challenged activity is neither protected nor prohibited by the NLRA, we find that the trial court erred when it concluded that United's claims were pre-empted by federal law. See *Garmon, supra,* at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 783; and *J.A. Croson, supra,* 81 Ohio St.3d at 354, 691 N.E.2d at 662–663.

■ However, even if we were to disregard the NLRB's finding, accepting Pillsbury's contention instead, a cause of action which is either governed or arguably governed by the NLRA may nonetheless be pursued in court "if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." *Belknap, Inc. v. Hale* (1983), 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798, 807.

■ Approached from this position, we find that the issues presented by United's complaint involve the Ohio law of contract, estoppel, and unjust enrichment, and are, at the very most, of only peripheral concern to federal labor law. "The interests of the Board and the NLRA, on the one hand, and the interest of the State in providing a remedy to its citizens for breach of contract, on the other, are 'discrete' concerns." *Belknap, supra,* at 512, 103 S.Ct. at 3184, 77 L.Ed.2d at 815 An agreement to divide incidental costs associated with renting meeting space and providing drinks and meals does not implicate concerns addressed by the NLRA governing collective bargaining with respect to wages, hours, and

other terms and conditions of employment. Accordingly, we find that the trial court erred in determining that United's claims are pre-empted by the NLRA. Thus, United's first assignment of error is sustained.

Turning to the second assignment of error, it is our opinion that the trial court also erred when it concluded that United's claims are barred by the doctrine of *res judicata.* On numerous occasions, courts have explained that the doctrine of *res judicata* is applicable to orders rendered as a result of the proceedings of administrative agencies, but only when those proceedings are "of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding." *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 263, 31 OBR 463, 465, 510 N.E.2d 373, 376. Proceedings of administrative agencies are neither judicial nor quasi-judicial in nature when they (1) do not require notice, (2) do not require a hearing, and (3) when the parties do not have the opportunity to introduce evidence. *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562.

In this case, the NLRB conducted an investigation, not an adjudicative hearing. The record contains no indication that either party was allowed to participate in the investigation. Neither party was given notice of when the investigation would occur, or how it would proceed. No adjudicative hearing was conducted, and neither party was given the opportunity to introduce evidence. Thus, the doctrine of *res judicata* is not applicable to the investigation and subsequent determination by the NLRB. United's second assignment of error is therefore sustained.

For the foregoing reasons, both assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed. This cause is therefore remanded to that court for further proceedings in accordance with law and this opinion.

*Judgment reversed*
*and cause remanded.*

McCORMAC and KENNEDY, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.