{¶ 1} Relator, Nestle USA — Prepared Foods Division, Inc., commenced this original action requesting a writ of mandamus ordering respondent, Self-Insuring Employers Evaluation Board ("SIEEB"), of the Ohio Bureau of Workers' Compensation ("bureau") to vacate its order finding that relator improperly terminated temporary total disability ("TTD") compensation to respondent, Karen S. Chesnick, and to enter an order denying Chesnick's complaint. Relator also requests that the writ order respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's motion to retroactively terminate TTD compensation and awarding further TTD compensation based upon a psychiatric claim allowance, and to enter an order granting relator's motion to terminate TTD compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate made the following determinations: (1) the bureau and SIEEB had subject matter jurisdiction over the complaint; (2) SIEEB did not abuse its discretion in finding that relator improperly terminated Chesnick's TTD compensation; (3) the commission did not abuse its discretion in denying relator's motion to retroactively terminate Chesnick's TTD compensation effective January 8, 2000; and (4) the commission did not have jurisdiction, pursuant to notice, to award further TTD compensation based upon the psychiatric claim allowance.
 {¶ 3} Relator has filed two objections to the magistrate's decision contesting the second and third determinations noted above.
 {¶ 4} First, relator argues that there was no evidence in the record to support either the SIEEB's or the magistrate's decision. At the outset, it should be noted that relator failed to assert this argument before the magistrate. Nevertheless, we have considered this argument and find it unpersuasive. Dr. Tucker's December 2, 1999 C-84, certifying claimant's inability to return to her former position of employment, his response to relator's request for information regarding the claimant's restrictions, evidence of relator's inability to provide work within those restrictions and relator's subsequent unilateral termination of TTD compensation, all constitute some evidence supporting the SIEEB's decision.
 {¶ 5} The SIEEB order contains a number of references to Dr. Tucker's findings regarding Chesnick's ability to work with restrictions. These documents were before the SIEEB and were clearly considered by it. Likewise, this same evidence was reviewed by the magistrate and is the basis for his findings of fact. Although there is no explicit reference to Dr. Tucker's December 2, 1999 C-84 in the SIEEB order, the order adequately describes the essential evidence and states the basis for its decision. Therefore, we find that relator's first objection is without merit.
 {¶ 6} Second, relator argues that, because Dr. Tucker determined Chesnick was capable of work, the SIEEB abused its discretion in denying relator's motion to terminate TTD compensation effective January 8, 2000. We disagree. The magistrate ably addresses relator's legal argument in his decision.
 {¶ 7} It is undisputed that neither relator nor any other employer made work available to Chesnick consistent with her restrictions prior to relator's termination of TTD compensation. Therefore, relator had no authority to unilaterally terminate TTD compensation and SIEEB did not abuse its discretion in finding that relator improperly terminated compensation. Likewise, if relator had no legal authority to unilaterally terminate TTD compensation, as held by the SIEEB, the commission had no authority to grant relator leave to retroactively terminate TTD compensation based upon the same set of facts. Therefore, relator's second objection is without merit.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has identified and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, this court shall issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its June 14, 2001 staff hearing officer's order to the extent that it awards TTD compensation based upon Dr. Cohen's reports, to conduct further proceedings on Chesnick's motion for TTD compensation pursuant to reasonable notice, and to enter an order that either grants or denies TTD compensation based upon the psychiatric claim allowance.
Objections overruled; writ granted in part and denied in part.
BOWMAN and TYACK, JJ., concur.
 IN MANDAMUS DECISION {¶ 9} In this original action, relator, Nestle USA — Prepared Foods Division, Inc. ("Nestle") requests a writ of mandamus ordering respondent Self-Insuring Employers' Evaluation Board ("SIEEB") of the Ohio Bureau of Workers' Compensation ("bureau") to vacate its order finding that Nestle improperly terminated temporary total disability ("TTD") compensation to respondent Karen S. Chesnick, and to enter an order denying Chesnick's complaint. Nestle also requests that the writ order respondent Industrial Commission of Ohio ("commission") to vacate its order denying Nestle's motion to retroactively terminate TTD compensation and awarding further TTD compensation based upon a psychiatric claim allowance, and to enter an order granting Nestle's motion to terminate TTD compensation.
Findings of Fact:
 {¶ 10} On February 18, 1998, Karen S. Chesnick ("claimant") filed a "First Report of an Injury, Occupational Disease or Death" ("FROI-1") alleging that on December 3, 1998, she sustained an industrial injury while employed as a "production prep weigher" for Nestle, a self-insured employer under Ohio's workers' compensation laws. Nestle refused to certify the industrial claim which is assigned claim No. 98-601070.
 {¶ 11} Following a March 23, 1999 hearing, a district hearing officer ("DHO") issued an order allowing the claim for "contusion left elbow/forearm and reflex sympathetic dystrophy of the left arm." The DHO also awarded TTD compensation from December 16, 1998 to March 3, 1999 "and to continue upon submission of medical proof of disability for the allowed conditions herein."
 {¶ 12} Apparently, the March 23, 1999 DHO's order was not administratively appealed.
 {¶ 13} Nestle paid TTD compensation pursuant to the DHO's order through June 14, 1999, when claimant returned to work at Nestle in a light duty capacity. However, claimant only worked through June 25, 1999.
 {¶ 14} Thereafter, Nestle received a C-84 dated August 9, 1999, from Dr. Tucker who certified that claimant was temporarily totally disabled as of July 1, 1999. Nestle reinstated TTD compensation based upon Dr. Tucker's C-84.
 {¶ 15} On December 2, 1999, Dr. Tucker completed another C-84 on which he certified TTD from December 1, 1999 to June 1, 2000, but also indicated that claimant could return to work on December 20, 1999. Dr. Tucker wrote: "Limited work duties, 40 hours a week — cannot use left hand, she needs to vary her positions (standing or sitting)."
 {¶ 16} By letter dated December 10, 1999, claimant's counsel informed Nestle that claimant will report for full-time light duty work on December 20, 1999, in accord with Dr. Tucker's restrictions.
 {¶ 17} Claimant's counsel's letter prompted Nestle to write to Dr. Tucker on December 15, 1999. Nestle's letter sought clarification of Dr. Tucker's C-84 which it called "confusing." In response, Dr. Tucker repeated the restrictions on his C-84. Nestle asked whether the claimant's condition has become "permanent." Dr. Tucker wrote "not known at this time — no cure for RSD." Nestle also asked whether claimant had "reached a treatment plateau." Dr. Tucker wrote "working 40 HRS then going back to pain mgmt."
 {¶ 18} Nestle extended TTD compensation through January 7, 2000, so it could schedule claimant for an examination to be performed by Dr. Kathleen A. Shultz.
 {¶ 19} By letter dated January 10, 2000, Nestle informed claimant as follows:
 This correspondence will confirm our meeting on Friday, January 7, 2000. As you know, according to the work restrictions indicated by Dr. Tarvez Tucker, you are unable to perform the essential job functions of the prep weigher position even with reasonable accommodation. Our company physician, Dr. K. Shultz, agrees with Dr. Tucker's assessment.
 Furthermore, we have evaluated whether or not a light duty position is available for you pursuant to the restrictions provided by Dr. Tucker. At this time, we have determined that there is not a light duty position at the plant that you can perform based on the information provided by Dr. Tucker. Therefore, effective today, your employment with Nestle USA — Food Group, Inc. will be terminated.
 {¶ 20} By letter dated January 28, 2000, Nestle informed claimant as follows:
 *** Nestle has discontinued your temporary total disability benefits after this date [January 1, 2000] because Dr. Tucker believes you can work with restrictions. Although you are no longer eligible for temporary total disability compensation, you may be eligible for non-working wage loss since Nestle does not have any work consistent with your restrictions. Upon receipt of the correct documents, we will process your wage loss claim accordingly.
 {¶ 21} On August 22, 2000, claimant filed with the bureau form S1-28 "Filing of Complaint against a Self-Insured Employer." The form provides the complaining party with the option of selecting among several preprinted statements describing the nature of the complaint. Claimant selected the following preprinted statement:
 Employer improperly terminated compensation without a hearing, without a statement from attending physician regarding maximum medical improvements, and/or permanency of allowed condition 4123-3-32.
 {¶ 22} The above preprinted complaining statement contains an error. The applicable Ohio Administrative Code provision is 4121-3-32, not 4123-3-32 as printed.
 {¶ 23} On November 20, 2000, the complaint was dismissed by an "auditor" of the bureau's "self-insured customer relations unit" on grounds that "employment was terminated as a result of company policy."
 {¶ 24} Claimant sought "reconsideration" of the dismissal of her complaint against the self-insured. On December 20, 2000, a deputy administrator of the bureau reversed the decision of the self-insured department and found the complaint to be valid.
 {¶ 25} Nestle timely appealed the decision of the deputy administrator to the bureau's SIEEB which held a formal hearing on the matter on February 14, 2001.
 {¶ 26} Thereafter, SIEEB issued a three page written decision, stating in part:
 After review of the facts related to the complaint as well as the written and oral testimony elicited at hearing, the Board finds the validity of the subject complaint must be upheld. The Board further finds the employer's argument that Dr. Tucker's December 21, 1999 statement that there was "no cure for RSD" did not support the finding of permanency or that the injured worker had reached maximum medical improvement. Though the Board recognizes that State ex rel. Jeep Corp. v. Indus. Comm. (1992), 64 Ohio St.3d 378, authorizes a self-insured employer to terminate temporary total disability compensation upon receipt of a written statement from the physician of record that the injured worker can return to his former job or has reached maximum medical improvement, that simply has not occurred in this claim. If the employer wished to adjudicate the ambiguity of Dr. Tucker's statement, it should have done so before the Industrial Commission, prior to terminating the injured workers' temporary total disability compensation.
 The Board also rejects the employer's contention that Ohio Adm. Code 4121-3-32(B) permits termination of temporary total disability compensation when a treating physician authorized light duty work. The rule permits termination where there is "available suitable employment." In this claim, suitable employment was not "available." In short, there is no legal authority which supports the employer's action.
 *** The Board further finds that the Administrator ordered the employer to comply with Ohio Adm. Code 4121-3-32 as it related to the payment of temporary total disability compensation but that temporary total disability compensation has not been appropriately paid. The Board therefore orders that the employer take corrective action and pay all outstanding temporary total disability compensation according to law within thirty days of the date of this order[.] *** [Emphasis sic.]
 {¶ 27} In the meantime, on December 1, 1999, claimant moved the commission for the recognition of psychiatric claim allowances. Following an April 18, 2000 hearing, a DHO additionally allowed the claim for "major depressive disorder" based upon reports from psychiatrist, Stephen G. Noffsinger, M.D., who examined claimant on behalf of Nestle. The DHO denied an additional allowance for "post traumatic stress disorder."
 {¶ 28} Apparently, the DHO's order of April 18, 2000, additionally allowing the claim was not administratively appealed.
 {¶ 29} In October 2000, claimant moved for TTD compensation beginning November 13, 1999, based upon a C-84 from his treating psychiatrist, Phill Cohen, M.D.
 {¶ 30} On March 5, 2001, following the decision of SIEEB, Nestle moved the commission to terminate TTD compensation effective January 8, 2000. In support, Nestle submitted Dr. Tucker's C-84s and his responses to Nestle's December 15, 1999 letter.
 {¶ 31} On March 14, 2001, Dr. Noffsinger again examined claimant at Nestle's request. Dr. Noffsinger issued a report dated March 27, 2001, in which he opined that claimant "is not presently disabled from working due to a mental disorder." Dr. Noffsinger further wrote:
 *** I estimate that she will see a full benefit from her depressive symptoms in approximately three months, given continued counseling and antidepressant medication treatment.
 It is my opinion with reasonable medical certainty that Karen Chesnick is not presently disabled from working due to a mental disorder. ***
 {¶ 32} On April 12, 2001, the commission mailed notice to the parties indicating that there would be a hearing before a DHO on April 30, 2001. The notice stated:
ISSUES TO BE HEARD:
Request to Terminate Temporary Total
Extent of Disability/MMI
 {¶ 33} Following an April 30, 2001 hearing, which was recorded and transcribed for the record, the DHO issued an order stating:
 It is the order of the District Hearing Officer that the C-86 Motion filed by Employer on 03/05/2001 is denied. The request to terminate temporary total disability compensation is denied. The District Hearing Officer finds that the Self-Insured Employer has no legal evidence nor authority to terminate temporary total disability compensation on 01/07/2000. Therefore temporary total disability compensation is awarded from 01/08/2000 through 07/02/2001 and to continue upon submission of medical evidence.
 The Employer contended that claimant was released to return to work at a light duty capacity is equated to release to return to work at her "formal position of employment." The District Hearing Officer finds that position contrary to State ex rel. Ramirez v. Industrial Commission (1982), 68 Ohio St.2d 630, which recognizes claimant to be temporary totally disabled if claimant is unable to return to work at his former position of employment. The District Hearing Officer disagrees.
 The District Hearing Officer also rejects the Employer's contention that O.R.C. 4121-3[-]32(B)(1)(b) permits a Self-Insured Employer from terminating temporary total disability compensation when a treating physician authorizes light duty work. The District Hearing Officer finds that before there is a lawful termination, the Self-Insured Employer must provide a written light duty job offer per Bureau of Workers' Compensation and Industrial Commission rules and regulations.
 Thus, only after a claimant has been offered a light duty job offer consistent with his treating physician's medical restrictions and rejected it, may the Self-Insured Employer then terminate temporary total disability compensation per O.R.C. 4121-3[-]32(B)(1)(b) (other available suitable employment).
 In this case, the Self-Insured Employer has not provided a written light duty job offer and has indicated suitable employment was not available.
 Thus, the District Hearing Officer finds no legal basis to terminate temporary total disability compensation on 01/07/2000.
 In awarding temporary total disability compensation, the District Hearing Officer relied on Dr. Tucker's C84 form dated 12/02/1999 and Dr. Cohen's C84 forms for the newly allowed condition of "major depression" per the reports of Dr. Cohen and his C84 forms.
 {¶ 34} The transcript of the April 30, 2001 hearing discloses the following colloquy:
 [Claimant's counsel] First of all, I would like to note for the record, that the claimant filed a motion for Temporary/Total disability benefits on August 6th of that year. I made a copy of the file, because I know that this was not in the file, but I think if we're going to consider termination of Temporary/Total to be terminated and all of the conditions, that cannot happen unless Temporary/Total with respect to the order is closed. I think it should be addressed at this hearing, but since it is not, I would argue that we reset on all issues.
 [Hearing Officer] Reset it? What is the exact date? I can't read it.
[Claimant's counsel] October 6th, 2000.
 [Hearing Officer] This is the first signed form that I have is the motion.
 [Claimant's counsel] It was not in the file. It does not apply for today's hearing.
 [Hearing Officer] That motion was processed, but we're going forward today.
 {¶ 35} Nestle administratively appealed the April 30, 2001 DHO's order. Following a June 14, 2001 hearing which was recorded and transcribed for the record, an SHO issued an order affirming the DHO's order. The SHO's order states:
 In affirming the well drafted opinion of the District Hearing Officer, the Staff Hearing Officer notes that there is no legal basis for terminating temporary total compensation on 01/07/00. There is no medical evidence that the claimant is physically able to return to her former place of employment, and there is no medical evidence that the claimant has reached maximum medical improvement.
 In ordering temporary total compensation continued, the Staff Hearing Officer relies on Dr. Tucker Cohen.
 {¶ 36} The transcript of the June 14, 2001 hearing discloses that, at the very outset, Nestle's counsel argued to the SHO:
 *** Dr. Cohen, treated Miss Chesnick for her psychiatric condition and the employer submits reliance upon that, that evidence was improper at this stage, although claimant has filed a motion requesting TT on the same claim, it's not been heard yet.
***
 *** [T]he employer's position is simply that the order shouldn't have included any considerations of the medical reports of Dr. Cohen[.] ***
 {¶ 37} On July 3, 2001, another SHO mailed an order refusing relator's administrative appeal from the June 14, 2001 SHO's order.
 {¶ 38} On October 25, 2001, relator, Nestle USA Prepared Food Division, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 39} Several issues are presented: (1) whether respondents bureau and SIEEB had subject matter jurisdiction over the complaint filed against the self-insured employer, (2) whether SIEEB abused its discretion in finding that Nestle improperly terminated TTD compensation, (3) whether the commission abused its discretion in denying Nestle's motion to terminate TTD compensation effective January 8, 2000, and (4) whether, pursuant to notice, the commission had jurisdiction to award further TTD compensation based upon the psychiatric claim allowance.
 {¶ 40} The magistrate finds: (1) the bureau and SIEEB had subject matter jurisdiction over the complaint, (2) SIEEB did not abuse its discretion in finding that Nestle improperly terminated TTD compensation, (3) the commission did not abuse its discretion in denying Nestle's motion to retroactively terminate TTD compensation effective January 8, 2000, and (4) the commission did not have jurisdiction, pursuant to notice, to award further TTD compensation based upon the psychiatric claim allowance.
 {¶ 41} Accordingly, because the commission did not have jurisdiction, pursuant to notice, to award further TTD compensation based upon the psychiatric claim allowance, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 42} Turning to the first issue, as previously noted, the preprinted complaint allegation selected by claimant on form S1-25 contains an error in stating:
Employer improperly terminated compensation without a hearing, without a statement from attending physician regarding maximum medical improvement, and/or permanency of allowed condition 4123-3-32[.]
 {¶ 43} As previously noted, the correct citation supporting the preprinted allegation is Ohio Adm. Code 4121-3-32.
 {¶ 44} In this action, Nestle argues that SIEEB had no "jurisdiction" to consider Ohio Adm. Code 4121-3-32 when the complaint pled a violation of Ohio Adm. Code 4123-3-32. According to relator, the bureau's decision addressed an issue not raised in the complaint and thus the decision is void ab initio. Nestle's argument lacks merit.
 {¶ 45} Apparently, Nestle is contending that SIEEB lacked subject matter jurisdiction over the complaint because Nestle cites to Fox v. Eaton Corp. (1976), 48 Ohio St.2d 236, in which the Ohio Supreme Court found that a common pleas court lacks subject matter jurisdiction over a complaint alleging a violation of Title VII of the Civil Rights Act of 1964, as amended in 1972. In Fox, supra, the court noted that the statute vests subject matter jurisdiction exclusively in the proper federal court.
 {¶ 46} SIEEB is a creature of R.C. 4123.352. R.C. 4123.352(C) provides:
 The administrator shall refer to the board all complaints or allegations of misconduct against a self-insuring employer or questions as to whether a self-insuring employer continues to meet minimum standards. The board shall investigate and may order the employer to take corrective action in accordance with the schedule the board fixes. ***
 {¶ 47} Supplementing the statute, Ohio Adm. Code 4123-19-09
states in part:
 (A) The bureau shall receive all complaints concerning any employer engaged in paying compensation directly to its employees. The bureau shall transfer to the self-insuring employers evaluation board only those complaints which are not resolved. An employer shall respond in writing to a complaint within thirty days of receipt thereof, and such response shall be made a part of the complaint file.
 (B) The administrator of the bureau of workers' compensation shall investigate and process all complaints against a self-insuring employer through the self-insuring employers section of the bureau.
 {¶ 48} R.C. 4123.352 clearly grants to the bureau and to SIEEB subject matter jurisdiction over complaints against a self-insuring employer.
 {¶ 49} Here, the complaint set forth the subject matter jurisdiction of the bureau and SIEEB. That the complaint contains an error in the citation to the rule supporting the allegation does not destroy subject matter jurisdiction, as relator seems to suggest here.
 {¶ 50} Instructive here is Civ.R. 12(H)(3) which states:
 Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.
 {¶ 51} The relevant inquiry when ruling upon a motion to dismiss for lack of subject matter jurisdiction is whether the plaintiff has set forth any cause of action which the court has authority to decide. United Food Commercial Workers Union, Local 1059, AFL-CIO v. Pillsbury Co. (2000), 138 Ohio App.3d 427. In so doing, the court is not confined to the allegations of the complaint but may consider relevant extraneous material without converting the motion into a motion for summary judgment. Id.
 {¶ 52} Following the guide of Civ.R. 12(H)(3) as interpreted by case law, the relevant inquiry here is whether the party complaining against the self-insured has set forth a cause of action which the bureau or SIEEB has authority to decide. Moreover, in determining whether there is subject matter jurisdiction, we are not confined to the allegations of the complaint. If we are not confined to the allegations of the complaint in determining whether there is subject matter jurisdiction, we are clearly not constrained by a mere error in the citation to the rule supporting the complaint. In short, relator's claim that respondents lacked subject matter jurisdiction over the complaint lacks merit.
 {¶ 53} The second and third issues are closely related and will thus be addressed together.
 {¶ 54} R.C. 4123.56(A) sets forth the criteria for the payment of TTD compensation. It states in part:
 *** In the case of a self-insuring employer, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to division (C) of section 4123.511 of the Revised Code. Payments shall continue pending the determination of the matter, however payment shall not be made for a period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement. Where the employee is capable of work activity, but the employee's employer is unable to offer the employee any employment, the employee shall register with the director of job and family services, who shall assist the employee in finding suitable employment. ***
 {¶ 55} Supplementing the statute, Ohio Adm. Code 4121-3-32
states:
 (B)(1) Temporary total disability may be terminated by a self-insured employer or the bureau of workers' compensation in the event of any of the following:
(a) The employee returns to work.
 (b) The employee's treating physician finds that the employee is capable of returning to his former position of employment or other available suitable employment.
 (c) The employee's treating physician finds the employee has reached maximum medical improvement.
***
 (C) The employee shall register with the bureau of employment services within fourteen days of receipt of either of the following:
 (1) A written statement from the employer or the bureau of workers' compensation that the employee's treating physician has found the employee capable of work activity and the employer has no work available within those capabilities.
 {¶ 56} The Ohio Supreme Court has held that where a treating physician continues to certify TTD compensation, a self-insured employer must continue to pay TTD compensation until one of the exceptions to the requirement of continued payment of TTD compensation occurs. AT T Technologies, Inc. v. Indus. Comm. (1993), 68 Ohio St.3d 55, 57; State ex rel Jeep v. Indus. Comm. (1991), 62 Ohio St.3d 64; State ex rel. Russell v. Indus. Comm. (1998), 82 Ohio St.3d 516.
 {¶ 57} As previously noted, Nestle's January 28, 2000 letter officially notified claimant of Nestle's reason for termination of TTD compensation. The letter advised claimant that her TTD compensation was being terminated because "Dr. Tucker believes that you can work with restrictions" and "Nestle does not have any work consistent with your restrictions." Thus, Nestle's January 28, 2000 letter, in effect, asserts that the termination of TTD compensation occurred pursuant to Ohio Adm. Code 4121-3-32(B)(1)(b).
 {¶ 58} Nestle has never disputed claimant's inability to return to her former position of employment at the time of the TTD termination. However, Nestle contends that it could unilaterally terminate TTD compensation because the treating physician, in effect, found that claimant was capable of "other available suitable employment." Nestle makes this claim even though it admittedly did not have available suitable employment for claimant at the time of TTD termination.
 {¶ 59} Nestle asserts here that claimant presented no evidence that suitable employment was not available. (Nestle's brief at 20-21.) Nestle further asserts that claimant "could not present such evidence because she did not look for suitable employment despite Nestle informing her that it did not have suitable employment for her." (Nestle's brief at 20-21.)
 {¶ 60} Nestle asserts that its interpretation of "available suitable employment" results from a reading of Ohio Adm. Code4121-3-32(B)(1)(b) in pari materia with Ohio Adm. Code 4121-3-32(C) which requires an employee to register with the Bureau of Employment Services when the employee receives a written statement from the employer that it has no work available within his capabilities. Relator also points out that a job search is ordinarily a prerequisite to obtaining wage loss compensation under R.C. 4123.56(B). Relator seems to suggest here that the wage loss statute and the commission's wage loss rules, see Ohio Adm. Code 4125-1-01 et seq., somehow impact upon the interpretation of "available suitable employment" involving TTD compensation.
 {¶ 61} Relator's assertion that claimant was required to launch a job search for suitable employment in order to forestall Nestle's termination of TTD compensation lacks merit.
 {¶ 62} As a practical matter, relator's interpretation of "available suitable employment" makes no sense in the context of permitting a self-insured employer to unilaterally terminate TTD compensation. Clearly, Ohio Adm. Code 4121-3-32(B)(1) provides undisputed circumstances when unilateral termination can occur. Where there is a dispute, unilateral termination is inappropriate. As the many cases involving wage loss compensation indicate, job searches almost invariably produce a dispute between the employee and the employer as to whether the job search was adequate. See State ex rel. Vanover v. Emery Worldwide (1997), 80 Ohio St.3d 367. (The adequacy of a job search must be resolved on a case-by-case basis and can encompass many factors.) Thus, reading a job search requirement into Ohio Adm. Code 4121-3-32(B)(1)(b) makes no practical sense.
 {¶ 63} Again, the pertinent statutory language of R.C. 4123.56(A) states that payment of TTD compensation shall not be made for the period "when work within the physical capabilities of the employee is made available by the employer or another employer." As respondents point out here, neither Nestle or another employer made work available to claimant prior to Nestle's termination of TTD compensation. Thus, Nestle had no authority to unilaterally terminate TTD compensation and SIEEB did not abuse its discretion in finding that Nestle improperly terminated TTD compensation.
 {¶ 64} The magistrate further notes that Nestle asserts here that it never argued that TTD could be terminated on grounds that the injury had reached maximum medical improvement ("MMI"). SIEEB addressed this question nevertheless. Because Nestle asserts here that it has never claimed that MMI could be a basis for unilateral termination of TTD compensation, this court need not address the MMI question addressed by SIEEB.
 {¶ 65} After Nestle received an adverse decision from SIEEB, it moved the commission for leave to retroactively terminate TTD compensation effective January 8, 2000.
 {¶ 66} Based upon the above resolution of the issues, it is clear that the commission did not abuse its discretion in denying Nestle's motion for leave to retroactively terminate TTD compensation as of January 8, 2000. Obviously, if Nestle had no legal authority to unilaterally terminate TTD compensation, as held by the SIEEB, the commission had no authority to grant to Nestle leave to retroactively terminate TTD compensation based upon the same set of facts.
 {¶ 67} The fourth issue is whether the commission, pursuant to notice, had jurisdiction to award further TTD compensation based upon the psychiatric claim allowance.
 {¶ 68} Procedural due process, as it applies to administrative hearings before the commission, includes the right to reasonable notice of hearing as well as a reasonable opportunity to be heard. State ex rel. Finley v. Dusty Drilling Co. (1981), 2 Ohio App.3d 323; State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1991), 73 Ohio App.3d 271. Reasonable notice of hearing includes the right to reasonable notice of the subject matter of the hearing. Id.
 {¶ 69} Here, the commission's notice of the April 30, 2001 hearing before a DHO apprised the parties that the subject matter would be "(1) request to terminate temporary total, [and] (2) extent of disability/MMI." The notice did not apprise the parties that the subject matter of the hearing would include claimant's motion for TTD based upon reports of her attending psychiatrist, Dr. Cohen.
 {¶ 70} It is important to note that prior to the April 30, 2001 hearing, claimant had only been paid TTD compensation based upon her physical injuries. The TTD termination issue only involved the physical claim allowances.
 {¶ 71} Moreover, the transcript of the April 30, 2001 hearing discloses that claimant's counsel conceded his belief that claimant's motion for TTD compensation based upon the psychiatric claim allowance was not at issue at the hearing. The transcript of the June 14, 2001 hearing before the SHO discloses that Nestle's counsel objected that the DHO's order awarded further TTD compensation based upon the psychiatric claim allowance. Thus, Nestle raised the issue on administrative appeal but the SHO failed to address the issue in his order.
 {¶ 72} It is clear from the record before this court that the commission did not have jurisdiction pursuant to notice to award further TTD compensation based upon the psychiatric claim allowance. Findlay; B.F. Goodrich, supra. Thus, the commission's award of TTD compensation based upon the reports of treating psychiatrist Dr. Cohen, must be vacated.
 {¶ 73} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its June 14, 2001 SHO's order to the extent that it awards TTD compensation based upon Dr. Cohen's reports, to conduct further proceedings on claimant's motion for TTD compensation pursuant to reasonable notice, and to enter an order that either grants or denies TTD compensation based upon the psychiatric claim allowance.